UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY ROCHA, | Case No. CV F 13-0796 LJO GSA |
| Plaintiff, | **ORDER ON DEFENDANTS' F.R.Civ.P. 12 MOTION TO DISMISS** |
| vs. | (Doc. 11.) |
| COUNTY OF TULARE, et al., | |
| Defendants. | |
| _____/ | |

## **PRELIMINARY STATEMENT TO PARTIES AND COUNSEL**

Judges in the Eastern District of California carry the heaviest caseload in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. This Court cannot address all arguments, evidence and matters raised by parties and addresses only the arguments, evidence and matters necessary to reach the decision in this order given the shortage of district judges and staff. The parties and counsel are encouraged to contact United States Senators Diane Feinstein and Barbara Boxer to address this Court's inability to accommodate the parties and this action. The parties are required to consider, and if necessary, to reconsider consent to one of this Court's U.S. Magistrate Judges to conduct all further proceedings in that the Magistrate Judges' availability is far more realistic and accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill who must prioritize criminal and older civil cases. A Magistrate Judge consent form is available on this Court's website.

Civil trials set before Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Judge O'Neill is unavailable on the original date set for trial. If a trial trails, it may

proceed with little advance notice, and the parties and counsel may be expected to proceed to trial with less than 24 hours notice. Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the nation to serve as visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from outside the Eastern District of California. Case management difficulties, including trial setting and interruption, are avoided if the parties consent to conduct of further proceedings by a U.S. Magistrate Judge.

## INTRODUCTION

Defendants Tulare County ("County") and County Sheriff's Department Deputy Gabriel Macias ("Deputy Macias") seek to dismiss as lacking sufficient facts plaintiff Jeremy Rocha's ("Mr. Rocha's") unlawful search and seizure and related claims arising from seizure of marijuana plants and firearms from Mr. Rocha's Visalia residence. Mr. Rocha responds that the County and Deputy Macias' (collectively "defendants'") challenges to his operative First Amended Complaint for Damages ("FAC") are neither "legally cognizable" nor consider properly the FAC's allegations "in their totality." This Court considered defendants' F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the August 14, 2013 hearing, pursuant to Local Rule 230(g). For the reasons discussed below, this Court DISMISSES the FAC's claims.

## BACKGROUND[1]

### Seizure Of Mr. Rocha's Marijuana Plants And Firearms

Mr. Rocha possesses a physician recommendation ("recommendation") "that marijuana would be an appropriate therapy for a serious medical condition" from which Mr. Rocha suffers. Pursuant to the recommendation, Mr. Rocha cultivated and possessed "medical marijuana for his personal medicinally therapeutic use." Mr. Rocha has a hearing disability.

On April 23, 2012, Deputy Macias and other County deputies[2] "knowingly and

---

[1] The factual recitation generally summarizes the FAC.

fraudulently" made false affidavits that Mr. Rocha possessed marijuana illegally and obtained and executed a warrant to search Mr. Rocha's residence for marijuana he cultivated and possessed. Deputy Macias and others "forcibly entered the Residence" and "yelled commands at Rocha and physically and verbally abused him when he did not respond to those commands." Such abuse "would not be imposed upon persons who did not suffer from a disability" such as Mr. Rocha's. "Macias and Others verbally humiliated Rocha by hurling epithets at him contending and implying that because of his hearing impairment he was going to be treated in a manner and as if he were stupid, lacked intelligence, lacked competence, or otherwise" and would not be entitled to full and equal accommodations provided by the County to a person not suffering disability.

Macias and others in excess of the search warrant's authority "seized and destroyed marijuana Rocha had lawfully under cultivation and in his possession for medicinal therapy" and deprived and retained firearms that Mr. Rocha lawfully possessed although "Macias and Others did not have probable cause to believe that possession of the firearm or firearms was unlawful or that it was evidence of criminal activity."

Defendants note that Mr. Rocha is subject to prosecution for violations of California Health and Safety Code section 11358 (unauthorized cultivation of marijuana) and California Penal Code section 12022(a)(1) (arming of firearm in commission of a felony). Mr. Rocha contends that he was entitled to be free from arrest and prosecution under the California Compassionate Use Act, Cal. Health & Saf. Code, § 11362.5, et seq.

## Mr. Rocha's Claims

The complaint's (first) California Civil Code section 52.1 ("section 52.1") and (second) 42 U.S.C. § 1983 ("section 1983") claims allege interference or attempted interference with Mr. Rocha's rights to:

---

[2]   The FAC appears to refer to the other County deputies as the "Others."

1. "[C]ultivate and possess marijuana without criminal penalty in accordance with the Recommendation";
2. "[K]eep and possess firearms in the Residence" secured under the Second Amendment;
3. "[E]qual treatment, equal benefit of public services, and to be free of harassment despite his disability" secured under California Civil Code section 51, et seq., and 42 U.S.C. § 12132;
4. Be free of "disparate treatment on the basis of his disability";
   and
5. "[B]e free from unreasonable search and seizure" secured by the Fourth and Fourteenth Amendments.

The complaint's (third) California Civil Code section 51 ("section 51") claim alleges Mr. Rocha was deprived of "full and equal accommodations, advantages, facilities, privileges, or services of the Sheriff."

## DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion to Dismiss Standards

Defendants challenge the FAC's claims as lacking sufficient facts.

A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995). A F.R.Civ.P. 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In addressing dismissal, a court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted

4

deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and must not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983). A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

A plaintiff is obliged "to provide the 'grounds' of his 'entitlement to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009), the U.S. Supreme Court explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit summarized: "In sum, for a complaint to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that

content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949-1950.

Prior to addressing defendants' challenges to the FAC's claims, this Court will next address section 52.1 and section 1983 principles.

### California's Bane Act – California Civil Code Section 52.1

Section 52.1 permits a civil action against a person who interferes or attempts to interfere by threats, intimidation or coercion with "exercise or enjoyment" of rights secured by the U.S. and California Constitutions and laws. "Section 52.1(b) provides a cause of action to any person who has been denied rights under the laws of California." *Winarto v. Toshiba America Electronics Components, Inc.*, 274 F.3d 1276, 1289, n. 13 (9th Cir. 2001), *cert. denied*, 537 U.S. 1098, 123 S.Ct. 816 (2003). The necessary elements for a section 52.1 claim are: "(1) defendants interfered with plaintiff's constitutional rights by threatening or committing violent acts; (2) that plaintiff reasonably believed that if she exercised her constitutional rights, defendants would commit violence against her []; (3) plaintiff was harmed; and (4) defendants'

conduct was a substantial factor in causing plaintiff's harm." *Tolosko-Parker v. County of Sonoma*, 2009 WL 498099, at *5 (N.D. Cal. 2009).

Section 52.1 requires "an attempted or completed act of interference with a legal right, accompanied by a form of coercion." *Jones v. Kmart Corp.*, 17 Cal.4th 329, 334, 70 Cal.Rptr.2d 844 (1998). "[N]othing in Civil Code section 52.1 requires any showing of actual intent to discriminate." *Venegas v. County of Los Angeles*, 32 Cal.4th 820, 842, 87 P.3d 1 (2004). Nonetheless, "section 52.1 does not extend to all ordinary tort actions because its provisions are limited to threats, intimidation, or coercion that interferes with a constitutional or statutory right." *Venegas*, 32 Cal.4th at 707, 87 P.3d 1. A defendant is liable under section 52.1 "if he or she interfered with the plaintiff's constitutional rights by the requisite threats, intimidation, or coercion." *Austin B. v. Escondido Union School Dist.*, 149 Cal.App.4th 860, 882, 57 Cal.Rptr.3d 454 (2007).

"Section 52.1 does not provide any substantive protections; instead, it enables individuals to sue for damages as a result of constitutional violations." *Reynolds v. County of San Diego*, 84 F.3d 1162, 1170 (9th Cir. 1996), *overruled on other grounds, Acri v. Varian Assocs., Inc.*, 114 F.3d 999 (9th Cir. 1997).

### **Section 1983 Requirements**

"Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632-633 (9th Cir. 1988).

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 811 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3 (1979)). Section 1983 and other federal civil rights statutes address liability "in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." *Carey v. Piphus*, 435 U.S. 247, 253, 98 S.Ct. 1042 (1978) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 996 (1976)). "The first inquiry in any § 1983 suit,

7

therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker,* 443 U.S. at 140, 99 S.Ct. 2689 (1979). Stated differently, the first step in a section 1983 claim is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 813 (1994). "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker*, 443 U.S. at 146, 99 S.Ct. 2689.

"Under Rule 8(a), a complaint must do more than name laws that may have been violated by the defendant; it must also allege facts regarding what conduct violated those laws." *Anderson v. U.S. Dept. of Housing and Urban Development*, 554 F.3d 525, 528 (5th Cir. 2008).

### *Direct Participation*

"Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996), *cert. denied*, 520 U.S. 1230, 117 S.Ct. 1822 (1997); *see Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant.") "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused the constitutional deprivation." *Leer*, 844 F.2d at 633. Section 1983 requires that there be an actual connection or link between the defendant's actions and the deprivation allegedly suffered. *See Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018 (1978); *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598 (1976).

A plaintiff cannot hold an officer liable "because of his membership in a group without a showing of individual participation in the unlawful conduct." *Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002) (citing *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996)). A plaintiff must "establish the 'integral participation' of the officers in the alleged constitutional violation." *Jones*, 297 F.3d at 935. "'[I]ntegral participation' does not require that each officer's actions themselves rise to the level of a constitutional violation." *Boyd v. Benton*

*County*, 374 F.3d 773, 780 (9th Cir. 2004).  Integral participation requires "some fundamental involvement in the conduct that allegedly caused the violation."  *Blankenhorn v. City of Orange*, 485 F.3d 463, 481, n. 12 (9th Cir. 2007).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

"A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights."  *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).  A section 1983 plaintiff "must state the allegations generally so as to provide notice to the defendants and alert the court as to what conduct violated clearly established law."  *Preschooler II v. Clark County School Bd. of Trustees*, 479 F.3d 1175, 1182 (9th Cir. 2007).

**Pleading The Section 52.1 And Section 1983 Claims**

Defendants fault the complaint's absence of facts that "the search and seizure was unreasonable" and that "the warrant was unlawful" given Mr. Rocha's ongoing criminal prosecution and limited allegations that Deputy Macias and others entered Mr. Rocha's residence and executed the search warrant.  Defendants point to the absence of facts to support knowledge that the warrant was based on false information and to describe the particular physical abuse imposed on Mr. Rocha.

Defendants further challenge the absence of facts to support a Second Amendment violation given there are no allegations of destruction of Mr. Rocha's weapon or indication that it will not be returned to him at conclusion of the underlying criminal action against Mr. Rocha.  Defendants further point to the absence of alleged facts that defendants prevent Mr. Rocha to retain or acquire other firearms.

Defendants question Mr. Rocha's right to medical marijuana given its controlled substance status under California and federal law and the ongoing criminal actions against Mr. Rocha.  Defendants conclude that the complaint lacks facts of a constitutional deprivation,

9

interference with a legal right or attempt to interfere with a legal right by threats, intimidation or coercion.

Mr. Rocha responds that unreasonableness of the search and seizure "forms the gravamen of the causes of action for deprivation of civil rights" and "is expressly pleaded." Mr. Rocha relies on FAC allegations that the search warrant lacked probable cause in that "defendants" made knowingly false statements in affidavits that Mr. Rocha illegally cultivated marijuana. Mr. Rocha concludes that "a search warrant knowingly procured by false statements is an adequate factual basis to render the search . . . a violation of Rocha's civil rights."

The FAC lacks necessary facts to support the section 52.1 and section 1983 claims. The gist of the factual allegations are that given Mr. Rocha's recommendation, Deputy Macias and others illegally searched Mr. Rocha's residence and seized marijuana and firearms and demeaned him during the search. The FAC lacks facts to support that Deputy Macias and others made false affidavits, forcibly entered Mr. Rocha's residence, were not entitled to execute the search warrant, and mistreated Mr. Rocha based on his disability. Mr. Rocha's reliance on falsity of statements to support the search warrant are inadequate conclusions. Neither the FAC nor Mr. Rocha identify the false statements nor explain their falsity. Merely alleging the search warrant is based on unidentified false statements is insufficient, especially given absence of facts of a challenge to the warrant in the underlying criminal action. An explanation as to falsity is necessary.

Mr. Rocha's points that he enjoys various rights fail to substantiate or to raise supporting inferences of a violation to invoke section 52.1 or section 1983 liability given the FAC's reliance on legal conclusions. The FAC's conclusions merely name alleged violations of California and federal law with no facts to depict conduct of such violations. The section 52.1 and section 1983 claims fail as pled.

### **Qualified Immunity**

Defendants contend that Deputy Macias "is protected by qualified immunity for any Fourth Amendment violation that occurs while he was executing the search warrant."

### *Purpose And Elements*

"[W]e see no reason why even a traditional qualified immunity defense may not be asserted on a Rule 12(b)(6) motion as long as the defense is based on facts appearing on the face of the complaint." *McKenna v. Wright*, 386 F.3d 432, 436 (2nd Cir. 2004). Qualified immunity protects section 1983 defendants "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 943 (9th Cir. 2004), *overruled on other grounds, Action Apt. Assoc., Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020 (9th Cir. 2007). The "heart of qualified immunity is that it spares the defendant from having to go forward with an inquiry into the merits of the case. Instead, the threshold inquiry is whether, assuming that what the plaintiff asserts the facts to be is true, any allegedly violated right was clearly established." *Kelley v. Borg*, 60 F.3d 664, 666 (9th Cir. 1995).

The issue of qualified immunity is "a pure question of law." *Elder v. Holloway*, 510 U.S. 510, 514, 114 S.Ct. 1019 (1994); *Romero v. Kitsap County*, 931 F.2d 624, 627-628 (9th Cir. 1991). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 129 U.S. 808, 815 (2009) (internal quotation omitted). To analyze qualified immunity, a court determines: (1) what right has been violated; (2) whether that right was so "clearly established" at the time of the incident that a reasonable officer would have been aware of its constitutionality; and (3) whether a reasonable officer could have believed that the alleged conduct was lawful. *Jensen v. City of Oxnard*, 145 F.3d 1078, 1085 (9th Cir. 1998), *cert. denied*, 525 U.S. 1016, 119 S.Ct. 540 (1988).

"It is incumbent on the officer executing a search warrant to ensure the search is lawfully authorized and lawfully conducted." *Groh v. Ramirez*, 540 U.S. 551, 563, 124 S.Ct. 1284 (2004). "In determining whether or not a search is confined to its lawful scope, it is proper to consider both the purpose disclosed in the application for a warrant's issuance and

the manner of its execution." *United States v. Rettig*, 589 F.2d 418, 423 (9th Cir. 1978).  The "threshold question" to address evidence uncovered during a search pursuant to a warrant is "whether the search was confined to the warrant's terms." *Rettig* 589 F.2d at 423.  A search must be "directed in good faith toward the objects specified in the warrant or for other means and instrumentalities by which the crime charged had been committed.  It must not be a general exploratory search." *Gurleski v. United States*, 405 F.2d 253, 258 (5th Cir. 1968), *cert. denied*, 395 U.S. 977, 981, 89 S.Ct. 2127, 2140 (1969).  Nonetheless, "[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable . . . will the shield of immunity be lost." *Malley v. Briggs*, 475 U.S. 335, 345, 106 S.Ct. 1092 (1986).

Defendants argue that in the search warrant context, an officer is entitled to qualified immunity if, although the warrants lacks probable cause, a reasonably well-trained officer would not have realized the defect and would not have applied for the warrant.

To oppose qualified immunity, Mr. Rocha points to FAC allegations that the warrant lacked probable cause or justification to search Mr. Rocha's residence given that the warrant, using Mr. Rocha's words, "was the product of falsehoods and deliberate misrepresentations." Mr. Rocha relies on FAC allegations that Deputy Macias and others "knowingly and fraudulently" make false affidavits that Mr. Rocha illegally possessed marijuana.  Mr. Rocha contends that such allegations are sufficient to satisfy F.R.Civ.P. 9(b) particularity requirements.

As pled the section 52.1 and section 1983 claims are susceptible to immunity defenses. As explained above, the FAC lacks sufficient facts to indicate that the warrant arose from false affidavits.  The FAC alleges conclusions that the affidavits were false because Mr. Rocha legally possessed marijuana.  The FAC does not describe the affidavits' contents.  The FAC lacks facts to suggest that Deputy Macias or others failed to ensure that the search of Mr. Rocha's residence was lawfully authorized and conducted.  The FAC provides no facts to question the warrant or its scope and execution.  Nothing suggests a general exploratory search, despite the allegations of seizure of firearms.

**<u>Unruh Civil Rights Act – California Civil Code Section 51</u>**

Defendants challenge the FAC's lack of facts to support the (third) section 51 claim. Section 51 provides a claim for intentional discrimination by a business establishment. *See Cohn v. Corinthian Colleges, Inc.*, 169 Cal.App.4th 523, 527-528 (2008). Section 51(b) provides: "All persons within the jurisdiction of this state are free and equal, and no matter what their . . . disability, medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services **in all business establishments** of every kind whatsoever." (Bold added.) The "Unruh Civil Rights Act firmly established the right of all persons to nondiscriminatory treatment by establishments that engage in business transactions with the public." *Warfield v. Peninsula Golf & Country Club,* 10 Cal.4th 594, 618, 896 P.2d 776 (1995).

Defendants contend that the section 51 claim fails in that a county jail does not engage in public business transactions and is not a "business establishment." "The word 'business' embraces everything about which one can be employed, and it is often synonymous with calling, occupation or trade, engaged in for the purpose of making a livelihood or gain." *O'Connor v. Village Green Owners Assoc.*, 33 Cal.3d 790, 795, 191 Cal.Rptr. 320 (1983). "According to this test, a prison does not qualify as a 'business' because prisoners are not engaged in a calling, occupation or trade for purposes of making a livelihood or gain. Rather, they are incarcerated by the state because of crimes which they have committed." *Taormina v. California Dept. of Corrections,* 946 F.Supp. 829, 834 (S.D. Cal. 1996). Defendants analogize Mr. Rocha's jail custody to a prison to avoid section 51's reach. Defendants further fault the absence of allegations that Mr. Rocha "was denied any accommodation or privilege that should be afforded him while he was in custody."

Mr. Rocha concedes that he lacks a section 51 claim. Mr. Rocha asserts that his third claim should proceed under Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131, et seq., which lacks a business establish element. As such, Mr. Rocha requests to amend the third claim to proceed under the ADA.

Title II of the ADA prohibits a public entity to discriminate against a qualified

individual based on disability. For a public program's or service's violation of Title II of the ADA, a plaintiff must allege:

    1.    He/she is a "qualified individual with a disability";

    2.    He/she was excluded from participation in or denied benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and

    3.    The exclusion, denial of benefits or discrimination was by reason of his/her disability.

*Weinreich v. Los Angeles County Metropolitan Transportation Authority*, 114 F.3d 976, 978 (9th Cir. 1997).

Neither the FAC nor Mr. Rocha's opposition papers demonstrate the viability of an ADA claim. The FAC merely alleges Mr. Rocha's "serious hearing impairment," his suffering abuse which would not have been imposed on persons "who did not suffer from a disability," and Deputy Macias' and others' oral statements to imply that Mr. Rocha was "not entitled to the full and equal accommodations, advantages, facilities, privileges, or services that would be given by the County of Tulare to any person not so suffering from such disabilities." Neither the FAC nor Mr. Rocha's opposition papers reference how Mr. Rocha was denied benefits, services, programs or activities. Despite the absence of an apparent ADA claim, out of an abundance of caution, Mr. Rocha is granted an opportunity to plead an ADA claim in place of the section 51 claim, which is dismissed with prejudice.

## CONCLUSION AND ORDER

Mr. Rocha filed the FAC as a matter of course under F.R.Civ.P. 15(a)(1) after defendants attacked his original complaint. The FAC is no meaningful improvement of Mr. Rocha's original complaint and makes little effort to cure deficiencies. Out of an abundance of caution, Mr. Rocha is given one, and only one, opportunity to amend the FAC's claims which are not dismissed with prejudice. As such, this Court DISMISSES with leave to amend the FAC's claims, except that the section 51 claim is dismissed with prejudice and Mr. Rocha is granted leave to allege an ADA claim. This Court ORDERS Mr. Rocha, no later than August

30, 2013, to file and serve either: (1) papers to dismiss this action in its entirety; or (2) a further amended complaint in compliance with this order.  This Court ORDERS defendants, no later than September 20, 2013, to file and serve a response to Mr. Rocha's further amended complaint, if necessary.

IT IS SO ORDERED.

Dated:   **August 8, 2013**                              **/s/ Lawrence J. O'Neill**
                                                                        UNITED STATES DISTRICT JUDGE