1
2
3
4
5

UNITED STATES DISTRICT COURT

6

EASTERN DISTRICT OF CALIFORNIA

7
8

JEREMY ROCHA,                                   CASE NO. CV F 13-0796 LJO GSA

9

                          Plaintiff,            **ORDER TO DISMISS ACTION AND**

10                                              **JUDGMENT THEREON**
                                                (Doc. 18.)

11
12

          vs.

13
14

COUNTY OF TULARE, et al.,

15                        Defendants.
16    _____/

17                                              **INTRODUCTION**

18          Defendants Tulare County ("County") and County Sheriff's Department Deputy

19    Gabriel Macias ("Deputy Macias") seek to dismiss as lacking sufficient facts plaintiff Jeremy

20    Rocha's ("Mr. Rocha's") unlawful search and seizure and related disability claims arising from

21    seizure of marijuana plants and firearms from Mr. Rocha's Visalia residence.  Mr. Rocha

22    responds that his operative Second Amended Complaint for Damages ("SAC") alleges

23    "numerous facts," including "ultimate facts" to plead claims satisfactorily.  This Court

24    considered defendants' F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the

25    October 30, 2013 hearing, pursuant to Local Rule 230(g).  For the reasons discussed below,

26    this Court DISMISSES this action and ENTERS judgment in favor of the County and Deputy

27    Macias (collectively "defendants").

28

1

# BACKGROUND[1]

## Seizure Of Mr. Rocha's Marijuana Plants And Firearms

Mr. Rocha possesses a physician recommendation ("recommendation") "that marijuana would be an appropriate therapy for a serious medical condition" from which Mr. Rocha suffers. Pursuant to the recommendation, Mr. Rocha cultivated and possessed "medical marijuana for his personal medicinally therapeutic use." Mr. Rocha has a hearing disability.

On April 23, 2012, Deputy Macias and other County deputies[2] made affirmations, which they knew or should have known were false, in a search warrant affidavit that Mr. Rocha possessed marijuana illegally. Deputy Marcias and others knew or should have known that Mr. Rocha "was at all times in lawful and peaceful possession of marijuana" pursuant to the California Compassionate Use Act ("CUA"), Cal. Health & Saf. Code, § 11362.5, et seq., which permitted Mr. Rocha "to cultivate and possess marijuana." Deputy Macias and others procured a warrant "which they knew or should reasonably have known would not have issued but for the false affidavit."

On April 23, 2012, with a display of firearms and physical restraint of Mr. Rocha, Deputy Marcias and others searched Mr. Rocha's residence and obtained identification cards and the recommendation to authorize Mr. Rocha "to lawfully cultivate and possess all of the marijuana" located during the search. Deputy Marcias and others "seized the marijuana located during the search and arrested Rocha without probable cause to believe he had committed a felony" and further seized Mr. Rocha's firearms.

Deputy Macias and others in excess of the search warrant's authority "seized and destroyed marijuana Rocha had lawfully under cultivation and in his possession for medicinal therapy" and deprived and retained firearms that Mr. Rocha lawfully possessed although

---

[1]      The factual recitation generally summarizes the SAC.

[2]      The SAC appears to refer to the other County deputies as the "Others."

"Macias and Others did not have probable cause to believe that possession of the firearm or firearms was unlawful or that it was evidence of criminal activity."

### Disregard Of Mr. Rocha's Disability

Despite Mr. Rocha's serious hearing impairment, Deputy Macias and others "failed to provide aides, interpreters, and assistants to ensure that communications made by them to Rocha were understood by Rocha."  Deputy Macias and others "yelled commands at and used gestures that were intended to physically and verbally abuse Rocha."  When Mr. Rocha failed to respond to commands, Deputy Macias and others "physically restrained and abused Rocha punitively for his failure to obey their commands despite the fact that they knew or should have known that Rocha was hearing impaired and had not heard or understood those commands." Such abuse "would not be imposed upon persons who did not suffer from a disability" such as Mr. Rocha's.  "Macias and Others verbally humiliated Rocha by hurling epithets at him contending and implying that because of his hearing impairment he was going to be treated in a manner and as if he were stupid, lacked intelligence, lacked competence, or otherwise" and would not be entitled to full and equal accommodations provided by the County to a person not suffering disability.

Defendants note that Mr. Rocha is subject to prosecution for violations of California Health and Safety Code section 11358 (unauthorized cultivation of marijuana) and California Penal Code section 12022(a)(1) (arming of firearm in commission of a felony).  Mr. Rocha contends that he was entitled to be free from arrest and prosecution under the CUA.

### Mr. Rocha's Claims

The SAC's (first) California Civil Code section 52.1 ("section 52.1") and (second) 42 U.S.C. § 1983 ("section 1983") claims allege interference or attempted interference with Mr. Rocha's rights to:

1. "[B]e free from unreasonable search and seizure" secured by the Fourth and Fourteenth Amendments;

2. "[K]eep and possess firearms in the Residence" secured under the Second

3

Amendment;

3.     "[P]ossess and cultivate marijuana in accordance with the Recommendation";

4.     "[E]qual treatment and to be free of harassment on the basis of his disability, to services of an aide, interpreter, or assistant with communication between defendants and himself during the execution of a criminal search warrant";  and

5.     "[E]qual treatment and benefit of public services and facilities" secured under 42 U.S.C. § 12132.

The SAC's third claim proceeds under Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131, et seq., and alleges that Mr. Rocha was deprived of "full and equal accommodations, advantages, facilities, privileges, or services of the Sheriff" in the absence of "a communications assistant, aide, or interpreter" during "a criminal search, which operation was inherently dangerous and which danger was exacerbated by the inability of the County of Tulare's officers to communicate adequately with Rocha."

## DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion to Dismiss Standards

Defendants challenge the SAC's claims as lacking sufficient facts and characterize the SAC to proceed on "conclusory deductions of fact and unreasonable inferences."

A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).  A F.R.Civ.P. 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In addressing dismissal, a court must:  (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted

deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and must not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged."  *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment."  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

A plaintiff is obliged "to provide the 'grounds' of his 'entitlement to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).  Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action."  *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."  *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009), the U.S. Supreme Court explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit summarized: "In sum, for a complaint to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that

content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949-1950.

Prior to addressing defendants' challenges to the SAC's claims, this Court will next address section 52.1 and section 1983 principles.

**California's Bane Act – California Civil Code Section 52.1**

Section 52.1 permits a civil action against a person who interferes or attempts to interfere by threats, intimidation or coercion with "exercise or enjoyment" of rights secured by the U.S. and California Constitutions and laws. "Section 52.1(b) provides a cause of action to any person who has been denied rights under the laws of California." *Winarto v. Toshiba America Electronics Components, Inc.*, 274 F.3d 1276, 1289, n. 13 (9th Cir. 2001), *cert. denied*, 537 U.S. 1098, 123 S.Ct. 816 (2003). The necessary elements for a section 52.1 claim are: "(1) defendants interfered with plaintiff's constitutional rights by threatening or committing violent acts; (2) that plaintiff reasonably believed that if she exercised her constitutional rights, defendants would commit violence against her []; (3) plaintiff was harmed; and (4) defendants'

conduct was a substantial factor in causing plaintiff's harm." *Tolosko-Parker v. County of Sonoma*, 2009 WL 498099, at \*5 (N.D. Cal. 2009).

To "prevail on a claim under section 52.1, plaintiff must prove that the defendant(s) interfered (or attempted to interfere) with her rights by threats, intimidations, or coercion (and that the defendant(s) did so other than by speech alone, unless the speech itself threatened violence)." *Doe By and Through Doe v. Petaluma City School Dist.,* 830 F.Supp. 1560, 1582 (N.D. Cal. 1993).  Section 52.1 requires "an attempted or completed act of interference with a legal right, accompanied by a form of coercion." *Jones v. Kmart Corp.*, 17 Cal.4th 329, 334, 70 Cal.Rptr.2d 844 (1998).  "[N]othing in Civil Code section 52.1 requires any showing of actual intent to discriminate." *Venegas v. County of Los Angeles*, 32 Cal.4th 820, 842, 87 P.3d 1 (2004).  Nonetheless, "section 52.1 does not extend to all ordinary tort actions because its provisions are limited to threats, intimidation, or coercion that interferes with a constitutional or statutory right." *Venegas*, 32 Cal.4th at 707, 87 P.3d 1.  A defendant is liable under section 52.1 "if he or she interfered with the plaintiff's constitutional rights by the requisite threats, intimidation, or coercion." *Austin B. v. Escondido Union School Dist.*, 149 Cal.App.4th 860, 882, 57 Cal.Rptr.3d 454 (2007).

"Section 52.1 does not provide any substantive protections; instead, it enables individuals to sue for damages as a result of constitutional violations." *Reynolds v. County of San Diego*, 84 F.3d 1162, 1170 (9th Cir. 1996), *overruled on other grounds, Acri v. Varian Assocs., Inc.*, 114 F.3d 999 (9th Cir. 1997).

### Section 1983 Requirements

"Section 1983 imposes two essential proof requirements upon a claimant:  (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632-633 (9th Cir. 1988).

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 811 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, 99 S.Ct.

2689, 2694, n. 3 (1979)).  Section 1983 and other federal civil rights statutes address liability "in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." *Carey v. Piphus*, 435 U.S. 247, 253, 98 S.Ct. 1042 (1978) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 996 (1976)).  "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'"  *Baker,* 443 U.S. at 140, 99 S.Ct. 2689 (1979).  Stated differently, the first step in a section 1983 claim is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 813 (1994).  "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law."  *Baker*, 443 U.S. at 146, 99 S.Ct. 2689.

"Under Rule 8(a), a complaint must do more than name laws that may have been violated by the defendant; it must also allege facts regarding what conduct violated those laws."  *Anderson v. U.S. Dept. of Housing and Urban Development*, 554 F.3d 525, 528 (5th Cir. 2008).

### Direct Participation

"Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation."  *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996), *cert. denied*, 520 U.S. 1230, 117 S.Ct. 1822 (1997); *see Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant.")  "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused the constitutional deprivation."  *Leer*, 844 F.2d at 633.  Section 1983 requires that there be an actual connection or link between the defendant's actions and the deprivation allegedly suffered.  *See Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018 (1978); *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598 (1976).

A plaintiff cannot hold an officer liable "because of his membership in a group without a showing of individual participation in the unlawful conduct."  *Jones v. Williams*, 297 F.3d

8

930, 935 (9th Cir. 2002) (citing *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996)).  A plaintiff must "establish the 'integral participation' of the officers in the alleged constitutional violation."  *Jones*, 297 F.3d at 935.  "'[I]ntegral participation' does not require that each officer's actions themselves rise to the level of a constitutional violation."  *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004).  Integral participation requires "some fundamental involvement in the conduct that allegedly caused the violation."  *Blankenhorn v. City of Orange*, 485 F.3d 463, 481, n. 12 (9th Cir. 2007).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

"A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights."  *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).  A section 1983 plaintiff "must state the allegations generally so as to provide notice to the defendants and alert the court as to what conduct violated clearly established law."  *Preschooler II v. Clark County School Bd. of Trustees*, 479 F.3d 1175, 1182 (9th Cir. 2007).

With these principles in mind, this Court turns to defendants' challenges to the SAC's section 52.1 and section 1983 claims.

## Pleading The Section 52.1 And Section 1983 Claims

### *Search Warrant*

Defendants fault the complaint's absence of facts that "the search and seizure was unreasonable" and that "the warrant was unlawful" given Mr. Rocha's ongoing criminal prosecution and limited allegations that Deputy Macias and others entered Mr. Rocha's residence and executed the search warrant.  Defendants point to the absence of facts to support knowledge that the warrant was based on false information and to explain "why the affidavit was false."  Defendants note the SAC's failure to allege that the amount of seized marijuana fell within the scope allowed by the recommendation and that Mr. Rocha has successfully

challenged the warrant and marijuana seizure in his criminal action.

Mr. Rocha responds that the "warrant was unlawfully procured and the defendants knew it before they executed the warrant and that the warrant was not supported by probable cause." Mr. Rocha continues that the warrant was procured by "deliberate falsehoods as to felonious activity by Rocha." Mr. Rocha identifies as false "that marijuana is being possessed and cultivated feloniously" with "no reason to believe that marijuana is being possessed and cultivated feloniously." Mr. Rocha points to SAC allegations that Mr. Rocha was entitled to cultivate and possess marijuana. Mr. Rocha concludes that "defendant knew that the warrant itself was not supported by probable cause and therefore could not authorize the search and seizure."

### Threats Of Violence

Defendants criticize the SAC's absence of facts of threats, intimidation or coercion to support a section 52.1 claim. Defendants fault the SAC's inability "to state what the defendants did to threaten, intimidate, or coerce" in that the SAC alleges limited facts of seizure of marijuana and a firearm based on a warrant, "not because of any threatening behavior." Defendants conclude that the SAC merely alleges defendants' performance "as law enforcement officers executing a search warrant" with no facts that "defendants exceeded their authority under the warrant." Defendants characterize as insufficient limited allegations that defendants executed the search warrant, displayed firearms, yelled commands, physically restrained Mr. Rocha, searched his residence, and seized evidence.

In response, Mr. Rocha appears to support the section 52.1 claim based on SAC allegations that:

1.      "Macias and Others physically restrained and abused Rocha punitively for his failure to obey their verbal commands despite the fact that they knew or should have known that Rocha was hearing impaired and had not heard or understood those commands"; and

2.      "The verbal and physical abuse imposed by Macias and Others as herein alleged was such that would not be imposed upon persons who did not suffer from a disability and/or medical condition as then and there suffered by Rocha as hereinabove alleged and was further

such that would be imposed upon and offensive and harmful to any person who did suffer from a disability and/or medical condition as then and there suffered by Rocha."

### Second Amendment

Defendants further challenge the absence of facts to support a Second Amendment violation given there are no allegations of destruction of Mr. Rocha's weapon or indication that it will not be returned to him at conclusion of the underlying criminal action against Mr. Rocha.  Defendants further point to the absence of alleged facts that defendants prevent Mr. Rocha to retain or acquire other firearms.

Mr. Rocha responds that defendants seized Mr. Rocha's firearms "without evidence of any kind that they were used in any way to commit a felony, or that they were feloniously possessed."

### Medical Marijuana

Defendants question Mr. Rocha's right to medical marijuana given its controlled substance status under California and federal law and the ongoing criminal action against Mr. Rocha.  Defendants conclude that the SAC lacks facts of a constitutional deprivation, interference with a legal right or attempt to interfere with a legal right by threats, intimidation or coercion.

Mr. Rocha responds that "he has a right to cultivate and possess marijuana for medical purposes free of criminal sanction and penalty under California law."

The SAC lacks necessary facts to support the section 52.1 and section 1983 claims. The gist of the factual allegations are that despite Mr. Rocha's recommendation, Deputy Macias and others procured a search warrant based on false statements to search illegally Mr. Rocha's residence, seized marijuana and firearms pursuant to the search warrant, and failed to accommodate his hearing impairment during the search.  The SAC lacks facts, as opposed to conclusions, that Deputy Macias and others made false affidavits, were not entitled to execute the search warrant, and mistreated Mr. Rocha based on his disability.

Mr. Rocha's reliance on falsity of statements to support the search warrant are inadequate conclusions.  The SAC and Mr. Rocha fail to identify false statements or explain

their falsity.  Merely alleging the search warrant is based on unidentified false statements is insufficient, especially given absence of facts of a challenge to the warrant in the underlying criminal action.  A key SAC omission are facts that Mr. Rocha possessed marijuana within CUA or recommendation permissible limits.  The SAC's inferences are that Mr. Rocha possessed marijuana beyond CUA or recommendation limits to warrant the search and seizure.

The SAC's allegations that Mr. Rocha enjoys and was deprived of various rights fail to substantiate or to raise supporting inferences of a violation to invoke section 52.1 or section 1983 liability given the SAC's reliance on legal conclusions.  The SAC's limited factual content is insufficient.  The SAC's conclusions merely name alleged violations of California and federal law with no facts to depict conduct of such violations.  There are no facts to portray alleged display of firearms and Mr. Rocha's physical restraint.  No allegations describe such acts, who committed them, and how they were committed.  The SAC concludes that Mr. Rocha's hearing impairment entitled him to accommodations during the search but alleges no facts that Mr. Rocha was precluded to communicate with searching officers.  There are no facts to connect yelled commands, use of gestures and Mr. Rocha's failure to response to the purported abuse of Mr. Rocha.   The section 52.1 and section 1983 claims fail, and Mr. Rocha offers no additional facts or substance to warrant an attempt to amend them.

## Qualified Immunity

Defendants contend that Deputy Macias "is protected by qualified immunity for any Fourth Amendment violation that occurs while he was executing the search warrant."

### *Purpose And Elements*

"[W]e see no reason why even a traditional qualified immunity defense may not be asserted on a Rule 12(b)(6) motion as long as the defense is based on facts appearing on the face of the complaint."  *McKenna v. Wright*, 386 F.3d 432, 436 (2nd Cir. 2004).   Qualified immunity protects section 1983 defendants "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 943 (9th Cir. 2004), *overruled on other grounds, Action Apt. Assoc., Inc. v. Santa Monica Rent*

*Control Bd.*, 509 F.3d 1020 (9th Cir. 2007).  The "heart of qualified immunity is that it spares the defendant from having to go forward with an inquiry into the merits of the case.  Instead, the threshold inquiry is whether, assuming that what the plaintiff asserts the facts to be is true, any allegedly violated right was clearly established."  *Kelley v. Borg*, 60 F.3d 664, 666 (9th Cir. 1995).

The issue of qualified immunity is "a pure question of law."  *Elder v. Holloway*, 510 U.S. 510, 514, 114 S.Ct. 1019 (1994); *Romero v. Kitsap County*, 931 F.2d 624, 627-628 (9th Cir. 1991).   "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 129 U.S. 808, 815 (2009) (internal quotation omitted).     To analyze qualified immunity, a court determines: (1) what right has been violated; (2) whether that right was so "clearly established" at the time of the incident that a reasonable officer would have been aware of its constitutionality; and (3) whether a reasonable officer could have believed that the alleged conduct was lawful.  *Jensen v. City of Oxnard*, 145 F.3d 1078, 1085 (9th Cir. 1998), *cert. denied*, 525 U.S. 1016, 119 S.Ct. 540 (1988).

 "It is incumbent on the officer executing a search warrant to ensure the search is lawfully authorized and lawfully conducted."  *Groh v. Ramirez*, 540 U.S. 551, 563, 124 S.Ct. 1284 (2004).  "In determining whether or not a search is confined to its lawful scope, it is proper to consider both the purpose disclosed in the application for a warrant's issuance and the manner of its execution."  *United States v. Rettig*, 589 F.2d 418, 423 (9th Cir. 1978).  The "threshold question" to address evidence uncovered during a search pursuant to a warrant is "whether the search was confined to the warrant's terms."  *Rettig* 589 F.2d at 423.  A search must be "directed in good faith toward the objects specified in the warrant or for other means and instrumentalities by which the crime charged had been committed.  It must not be a general exploratory search."  *Gurleski v. United States*, 405 F.2d 253, 258 (5th Cir. 1968), *cert. denied*, 395 U.S. 977, 981, 89 S.Ct. 2127, 2140 (1969).  Nonetheless, "[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence

1    unreasonable . . . will the shield of immunity be lost." *Malley v. Briggs*, 475 U.S. 335, 345,

2    106 S.Ct. 1092 (1986).

3         Defendants argue that in the search warrant context, an officer is entitled to qualified

4    immunity if, although the warrants lacks probable cause, a reasonably well-trained officer

5    would not have realized the defect and would not have applied for the warrant.

6         Mr. Rocha responds that "[t]here is no immunity shielding an officer from his or her

7    knowing misconduct in deliberately making false statements to procure a warrant to search."

8         As pled the section 52.1 and section 1983 claims are susceptible to immunity defenses.

9    As explained above, the SAC lacks sufficient facts to indicate that the warrant arose from false

10   affidavits.   The SAC alleges conclusions, not factual content, that the affidavit was false

11   because Mr. Rocha legally possessed marijuana, although the SAC fails to allege that the

12   amount of marijuana seized falls within the recommendation's scope.   The SAC neither

13   attaches the affidavit nor describes its contents.   The SAC lacks facts to suggest that Deputy

14   Macias or others failed to ensure that the search of Mr. Rocha's residence was lawfully

15   authorized and conducted.   The SAC provides no facts to question the warrant or its scope and

16   execution.   Nothing suggests a general exploratory search, despite the allegations of seizure of

17   firearms.   Qualified immunity further warrants dismissal of the SAC's section 1983 claims.

18                                    **The ADA Claim**

19        Title II of the ADA prohibits a public entity to discriminate against a qualified

20   individual based on disability.   More specifically, 42 U.S.C. § 12132 provides: "[N]o qualified

21   individual with a disability shall, by reason of such disability, be excluded from participation in

22   or be denied the benefits of the services, programs, or activities of a public entity, or be

23   subjected to discrimination by any such entity."   "Discrimination" includes "not making

24   reasonable accommodations to the known physical or mental limitations of an otherwise

25   qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A).

26        For a public program's or service's violation of Title II of the ADA, a plaintiff must

27   allege:

28        1.      He/she is a "qualified individual with a disability";

2.     He/she was excluded from participation in or denied benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and

3.     The exclusion, denial of benefits or discrimination was by reason of his/her disability.

*Weinreich v. Los Angeles County Metropolitan Transportation Authority*, 114 F.3d 976, 978 (9th Cir. 1997).

Defendants fault the SAC's absence of "specific facts" to identify denial of "accommodations, advantages, facilities, privileges, or services."  Defendants note the SAC's contradiction of Mr. Rocha's hearing impairment yet alleged suffering of "verbal abuse." Defendants characterize the SAC's ADA claim as premised on conclusions, especially given the absence of allegations that Mr. Rocha did not understand the officers' commands or was denied requested assistance or accommodation.

Mr. Rocha responds that defendants' conduct subjected Mr. Rocha "to exacerbated danger and threat or fear of injury to himself or his property by reason of the inability of defendants to communicate effectively with him."  Mr. Rocha holds a "public entity" to "take appropriate steps to ensure that communications with . . . members of the public . . . with disabilities are as effective as communications with others."  *See* 28 C.F.R. § 35.160(a)(1).

Although "the ADA applies to the investigation of criminal conduct,"  *Seremeth v. Bd. of County Com'rs Frederick County,* 673 F.3d. 339 (4th Cir. 2012), neither the SAC nor Mr. Rocha's opposition papers demonstrate viability of an ADA claim.  Stripped of its verbosity, the SAC merely alleges Mr. Rocha's "serious hearing impairment," his suffering abuse which would not have been imposed on persons "who did not suffer from a disability," and non-receipt of unidentified "aides, interpreters, and assistants."  There are no facts to support that defendants knew of Mr. Rocha's alleged impairment or that Mr. Rocha was even deaf.  The SAC merely attributes such knowledge as a conclusion.

Neither the SAC nor Mr. Rocha's opposition papers explain how Mr. Rocha either requested or was denied available benefits, services, programs or activities.  The SAC merely

15

alleges that unidentified "aides, interpreters, and assistants" were denied.  The SAC lacks facts that Mr. Rocha was unable to communicate with the deputies who executed the search warrant or did not understand the basis of the search.   There are neither facts nor inferences of discrimination based on Mr. Rocha's qualified disability.

Mr. Rocha fails to fit the search and seizure at issue into an ADA claim.  Mr. Rocha points to nothing in the ADA or its regulations that specifically regulate searches and seizures.  The seizure of marijuana and firearms and charging Mr. Rocha with criminal offenses are not the result of discrimination based on disability.  Mr. Rocha's apparent remedy due to purported communication failures is to attempt to suppress evidence in his criminal action.  Mr. Rocha fails to assert that better communication would have avoided the seizures and his criminal charges.

## CONCLUSION, ORDER AND JUDGMENT

Mr. Rocha filed his first amended complaint as a matter of course under F.R.Civ.P. 15(a)(1) after defendants attacked his original complaint.  Mr. Rocha filed his SAC in response to this Court's August 8, 2013 order to dismiss the first amended complaint for failure to allege viable claims.  The SAC is no meaningful improvement of Mr. Rocha's original complaint or first amended complaint and makes little effort to cure deficiencies, despite the August 8, 2013 order's identification of deficiencies and admonishment that Mr. Rocha would receive no further opportunity to amend his claims.  Mr. Rocha points to no further facts to support his claims, for which he has had ample opportunity to plead sufficiently.   In the absence of grounds to support a further attempt to amend Mr. Rocha's claims, this Court:

1.      DISMISSES this action with prejudice;

2.      ENTERS this JUDGMENT in favor of defendants County of Tulare and Gabriel Macias and against plaintiff Jeremy Rocha; and

3.      DIRECTS the clerk to close this action.

/ / /

/ / /

/ / /

16

1        This JUDGMENT is subject to F.R.App.4(a)'s time limitations to file an appeal of this

2    JUDGMENT.

3

4    IT IS SO ORDERED.

5      Dated:   __October 24, 2013__                    ____/s/ Lawrence J. O'Neill__

6                                              UNITED STATES DISTRICT JUDGE